McEvers, Justice.
 

 [¶ 1] Christopher Johnson appeals an amended judgment ordering him to pay $1,280 per month in child support. Heather Thompson cross-appeals from the judgment denying her request for attorney's fees. We affirm in part, reverse in part, and remand, concluding the district court failed to calculate Johnson's income in accordance with the child support guidelines.
 

 I
 

 [¶ 2] Johnson and Thompson have one child together born in 2013. The State provided Medicaid to the child before Johnson was adjudged the child's father. In May 2015, the district court awarded primary residential responsibility of the child to Thompson. Johnson, a self-employed farmer, was ordered to pay $314 per month in child support. In March 2016, Thompson moved for relief from the judgment relating to child support, arguing Johnson's previously reported income was not accurate.
 

 [¶ 3] Before the hearing on Thompson's motion for relief, a discovery dispute arose between the parties. After Thompson requested Johnson's tax and banking records, Johnson moved for a protective order, requesting that Thompson be prohibited from serving him with further discovery requests. Thompson responded with a motion to compel Johnson to provide the requested information.
 

 [¶ 4] At a March 2017 hearing on the parties' discovery motions, the district court granted Thompson's motion to compel and denied Johnson's motion for a protective order. The court ordered Johnson to provide Thompson the requested tax and banking records. The court also ordered both parties to pay their own attorney's fees. Thompson then moved for an order to show cause and attorney's fees, alleging Johnson violated the order to compel by not providing the required information relating to his income. After a hearing, the court found Johnson was not in contempt of its earlier discovery order and denied Thompson an award of attorney's fees.
 

 [¶ 5] At the hearing on Thompson's motion for relief from the judgment, Johnson submitted his income tax returns from 2012-2016 showing his average adjusted gross annual income was negative $50,972. Johnson and the State argued Johnson was underemployed on the basis of his income. They argued an annual income of $49,302 should be imputed to Johnson for child support purposes.
 

 [¶ 6] The district court received a 2016 balance sheet showing Johnson had $4,003,495 in assets, overall equity of $1,224,533, and crops in storage of $691,895. On the basis of Johnson's assets, overall equity, crops in storage, and an
 
 *318
 
 accounting reflecting his personal spending, the court found Johnson's tax returns did not accurately reflect his income for purposes of child support. The court considered Johnson's personal expenses and monthly budget and found Johnson's annual self-employment income was $171,560.66. The court found Johnson's net annual income was $113,916, and ordered Johnson to pay $1,280 per month in child support. The court ordered the parties to pay their own attorney's fees.
 

 II
 

 [¶ 7] Johnson and the State argue the district court clearly erred in calculating his income for child support purposes.
 

 [¶ 8] The standard of review for child support decisions is well established:
 

 Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. The district court errs as a matter of law if it fails to comply with the child support guidelines in determining an obligor's child support obligation.
 

 Raap v. Lenton
 
 ,
 
 2016 ND 195
 
 , ¶ 5,
 
 885 N.W.2d 777
 
 (quoting
 
 Halberg v. Halberg
 
 ,
 
 2010 ND 20
 
 , ¶ 8,
 
 777 N.W.2d 872
 
 ).
 

 [¶ 9] The child support guidelines found in N.D. Admin. Code ch. 75-02-04.1 govern child support determinations.
 
 Raap
 
 ,
 
 2016 ND 195
 
 , ¶ 5,
 
 885 N.W.2d 777
 
 . "A correct finding of an obligor's net income is essential to determining the proper amount of child support."
 

 Id.
 

 (quoting
 
 Verhey v. McKenzie
 
 ,
 
 2009 ND 35
 
 , ¶ 5,
 
 763 N.W.2d 113
 
 ). "Income must be sufficiently documented through the use of tax returns ... and other information to fully apprise the [district] court" of the obligor's income. N.D. Admin. Code § 75-02-04.1-02(7). "Each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." N.D. Admin. Code § 75-02-04.1-02(10). After establishing the obligor's net income, the district court applies that amount to the guidelines to calculate the proper amount of child support.
 
 Raap
 
 , at ¶ 5. The amount of child support calculated under the guidelines "is rebuttably presumed to be the correct amount of child support in all child support determinations." N.D. Admin. Code § 75-02-04.1-13 ;
 
 see also
 
 N.D. Admin. Code § 75-02-04.1-09(1).
 

 A
 

 [¶ 10] Johnson is a self-employed farmer; therefore, N.D. Admin. Code § 75-02-04.1-05, relating to self-employment income, applies. "Net income from self-employment means total income, for internal revenue service purposes, of the obligor." N.D. Admin. Code § 75-02-04.1-05(1). The guidelines recognize that "[s]elf-employment activities may experience significant changes in production and income over time." N.D. Admin. Code § 75-02-04.1-05(4). "To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, must be used to determine self-employment income."
 

 Id.
 

 "If the tax returns are not available or do not reasonably reflect the income from self-employment, profit and loss statements which more accurately reflect the current status must be used." N.D. Admin. Code § 75-02-04.1-05(3). A district court cannot arbitrarily ignore the guidelines simply because it feels the obligor's tax returns do not reasonably reflect the obligor's income without ordering the parties to present
 
 *319
 
 more information and making specific findings of fact.
 
 Raap
 
 ,
 
 2016 ND 195
 
 , ¶ 7,
 
 885 N.W.2d 777
 
 (citing
 
 Kobs v. Jacobson
 
 ,
 
 2005 ND 222
 
 , ¶ 8,
 
 707 N.W.2d 803
 
 ).
 

 [¶ 11] Johnson provided his 2012-2016 income tax returns showing his adjusted gross income was: $40,458 in 2012; $30,988 in 2013; negative $180,860 in 2014; negative $118,046 in 2015; and negative $27,401 in 2016. Johnson's average adjusted gross annual income for those years was negative $50,972.
 

 [¶ 12] Johnson's tax returns also included Schedule F "Profit or Loss From Farming" showing Johnson's profits and losses as follows: profit of $42,005 in 2012; profit of $36,550 in 2013; loss of $183,087 in 2014; profit of $23,450 in 2015; and profit of $53,276 in 2016. Johnson's average annual profit or loss from farming for those years was a loss of $5,561.
 

 [¶ 13] Under the child support guidelines, an obligor is presumptively underemployed if the obligor's gross income from earnings is less than six-tenths of the average statewide earnings for persons with similar work history. N.D. Admin. Code § 75-02-04.1-07(2)(a).
 
 [1]
 
 Under N.D. Admin. Code § 75-02-04.1-07(3)(b), gross income of an amount equal to six-tenths of the average statewide earnings for persons with similar work history must be imputed to an underemployed obligor.
 

 [¶ 14] The State submitted an exhibit published by Job Service of North Dakota showing the 2016 average wage for farmers and ranchers was $82,170. Six-tenths of the state's average earnings for farmers results in a gross annual income of $49,302. Using either his adjusted gross income or profits and losses from his tax returns, Johnson is underemployed under the child support guidelines.
 

 [¶ 15] Rather than imputing Johnson's income as an underemployed farmer under N.D. Admin. Code § 75-02-04.1-07(2) and (3), or for failing to provide reliable information under N.D. Admin. Code § 75-02-04.1-07(6), the district court considered his monthly expenses, assets, overall equity, and crops in storage. The court found "Christopher's income tax returns do not accurately reflect his gross income and do not reflect Christopher's in-kind income." The court found Johnson co-mingled his personal and business accounts, "making it hard to ascertain the exact amounts used for each." The court found Johnson's tax returns were not an accurate reflection of his income for child support purposes.
 

 [¶ 16] If the tax returns do not reasonably reflect self-employment income, the guidelines require the use of profit and loss statements.
 
 See
 
 N.D. Admin. Code § 75-02-04.1-05(3). The district court discussed Johnson's 2012-2016 gross revenues, indicating it reviewed his Schedule F "Profit and Loss from Farming." Under N.D. Admin. Code § 75-02-04.1-05(3), in rejecting the tax returns as unreliable means the court must go to a profit and loss statement separate from the tax return. The record reflects Johnson provided numerous tax documents, bank statements, balance sheets, and other financial records. The record also reflects that Johnson did
 
 not
 
 produce a number of financial documents requested in discovery, despite orders to compel production. On this record, there is no reason to believe Johnson would have provided a separate profit and loss statement.
 

 [¶ 17] Instead, the district court "considered all of the personal expenses as well as
 
 *320
 
 Christopher's monthly budget" and found his net annual income was $113,916. The court did not explain how using those figures satisfied the child support guidelines in determining his income. The court failed to impute Johnson's income or adequately explain how using his personal expenses and monthly budget satisfied the child support guidelines. Therefore, the court erred as a matter of law by failing to calculate Johnson's child support obligation according to the child support guidelines.
 

 B
 

 [¶ 18] In determining Johnson's income and child support obligation, the district court found he had $4,003,495 in assets, including crops in storage of $691,895. The court stated "It is clear that Christopher has a significant amount of assets," and referenced N.D. Admin. Code § 75-02-04.1-09(2), allowing a court to deviate from the presumptively correct amount of child support calculated under the guidelines.
 

 [¶ 19] The child support guidelines provide that the amount of child support calculated under the guidelines "is presumed to be the correct amount." N.D. Admin. Code § 75-02-04.1-09(1). However, the guidelines also provide various factors allowing a deviation from the correct amount of child support "if a preponderance of the evidence establishes that a deviation from the guidelines is in the best interest of the supported children." N.D. Admin. Code § 75-02-04.1-09(2) ;
 
 see also
 
 N.D.C.C. § 14-09-09.7(4). One of the factors allowing deviation from the correct amount of child support under the guidelines is "[t]he increased ability of an obligor, who is able to secure additional income from assets, to provide child support." N.D. Admin. Code § 75-02-04.1-09(2)(h). "Before using this provision to deviate upwards from the presumptively correct amount of child support, the court must state such income is a deviation and make explicit findings on the best interests of the children and the obligor's ability to secure additional income from assets."
 
 Entzie v. Entzie
 
 ,
 
 2010 ND 194
 
 , ¶ 22,
 
 789 N.W.2d 550
 
 .
 

 [¶ 20] Here, the district court discussed Johnson's assets and referenced N.D. Admin. Code § 75-02-04.1-09(2) ; however, the court did not find the presumptively correct amount of child support because it failed to calculate Johnson's income under the child support guidelines. On remand, after finding Johnson's income under the guidelines, the court may consider deviation from the guidelines if the evidence establishes deviation is in the best interests of the child.
 

 III
 

 [¶ 21] Thompson argues the district court erred by not awarding her attorney's fees relating to the parties' discovery disputes. Thompson argues N.D.R.Civ.P. 37(a)(5)(A) required the court to award her attorney's fees after it granted her motion to compel. She also argues she was entitled to attorney's fees after she moved for an order to show cause because Johnson failed to abide by the court's discovery order.
 

 [¶ 22] A district court has broad discretion regarding discovery, and its discovery decisions will be reversed on appeal only if it has abused that discretion.
 
 Bertsch v. Bertsch
 
 ,
 
 2007 ND 168
 
 , ¶ 10,
 
 740 N.W.2d 388
 
 . A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law.
 
 Zundel v. Zundel
 
 ,
 
 2017 ND 217
 
 , ¶ 27,
 
 901 N.W.2d 731
 
 .
 

 [¶ 23] Rule 37(a)(5)(A), N.D.R.Civ.P., provides:
 

 *321
 
 If the motion [to compel] is granted-or if the requested discovery is provided after the motion was filed-the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
 

 (i) the movant filed the motion before attempting in good faith to obtain discovery without court action;
 

 (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
 

 (iii) other circumstances make an award of expenses unjust.
 

 [¶ 24] At the March 2017 hearing on the parties' discovery motions, the district court granted Thompson's motion to compel and denied Johnson's motion for protective order. The court did not award Thompson attorney's fees; however, stating, "I'm going to order both parties be responsible for their own attorney's fees. I believe it was within Mr. Johnson's right to contest this matter and to have the Court make a ruling as to what might be discoverable." At the hearing on Thompson's order to show cause, the court found Johnson was not in contempt of its earlier discovery order. The court found Johnson did not willfully fail "to abide by the terms of discovery that the Court has set out previously."
 

 [¶ 25] Thompson argues the district court should have awarded her attorney's fees under N.D.R.Civ.P. 37(a)(5)(A) because it granted her motion to compel. However, N.D.R.Civ.P. 37(a)(5)(A)(iii) provides the court must not order payment of attorney's fees if "other circumstances make an award of expenses unjust." The court found Johnson had the right to contest the discovery issue relating to his income and have a ruling made on the issue. The court also found he did not willfully fail to abide by the court's discovery terms. The court provided sound reasoning supporting its decisions denying Thompson's requests for attorney's fees. We conclude the court did not abuse its discretion.
 

 IV
 

 [¶ 26] The amended judgment is affirmed in part, reversed in part, and remanded to allow the district court to calculate Johnson's child support obligation according to the child support guidelines.
 

 [¶ 27] Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Jon J. Jensen
 

 Gerald W. VandeWalle, C.J.
 

 [1]
 

 N.D. Admin. Code § 75-02-04.1-07 was amended effective January 1, 2018. This opinion discusses the version of N.D. Admin. Code § 75-02-04.1-07 in effect prior to the amendments.