# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 111

| | |
|---|---|
| Heather L. Thompson, | Plaintiff and Appellant |
| and | |
| State of North Dakota, | Plaintiff and Appellee |
| v. | |
| Christopher K. Johnson, | Defendant and Appellee |

No. 20180386

Appeal from the District Court of Traill County, East Central Judicial District, the Honorable Frank L. Racek, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Jensen, Justice.

Pamela F. Coleman, Grand Forks, ND, for plaintiff and appellant.

Patti J. Jensen, East Grand Forks, MN, for defendant and appellee.

Janet K. Naumann (on brief), Special Assistant Attorney General, Fargo, ND, for plaintiff and appellee.

**Jensen, Justice.**

[¶1]   Heather Thompson appeals from a district court judgment modifying Christopher Johnson's child support obligation and ordering her to repay overpayments of child support.  We reverse and remand.

I.

[¶2]   Thompson and Johnson have one child together.  In November 2015, Thompson was awarded primary residential responsibility of the minor child and Johnson was ordered to pay $314 a month in child support.  Thompson successfully moved the district court to vacate the judgment, and a new trial was held in May 2017.  Following the new trial, the court noted that "Johnson had $4,003,495 in assets, overall equity of $1,224,533, and crops in storage of $691,895."  Because Johnson's significant assets were not consistent with the average losses reflected in his tax returns, the court determined Johnson's tax returns did not accurately reflect his income for child support purposes.  Using Johnson's personal expenses and monthly budget to determine Johnson's in-kind income, the court found Johnson had a gross annual income of $171,560.66 and a net annual income of $113,916.  In September 2017, the court entered an amended judgment requiring Johnson to pay child support in the amount of $1,280 per month and $38,989 in back child support.  Johnson appealed.

[¶3]   On appeal, this Court concluded the district court "failed to impute Johnson's income or adequately explain how using his personal expenses and monthly budget satisfied the child support guidelines . . . [and] erred as a matter of law by failing to calculate Johnson's child support obligation according to the child support guidelines." *Thompson v. Johnson*, 2018 ND 142, ¶ 17, 912 N.W.2d 315.  The matter was then remanded for a recalculation of child support.

[¶4]  In August 2018, the district court entered its amended findings which included a finding that Johnson's tax returns and profit and loss statements showed net losses and a determination that Johnson was underemployed.  In determining whether Johnson was underemployed, the court did not consider its findings that Johnson had a gross annual income of $171,560 and a net annual income of $113,916, or its finding that Johnson has "sufficient cash flow to meet his monthly expenses of $8,367."  Based upon its determination that Johnson was underemployed, the court imputed Johnson's income pursuant to N.D. Admin. Code § 75-02-04.1-07, by considering the state's average earnings for someone with Johnson's qualifications and experience, and imputed wages at six-tenths of North Dakota's average earnings for farmers and ranchers—$49,302.  The corresponding child support obligation was $551 per month.  The court also found Johnson had an increased ability to secure additional income from his assets for the purpose of supporting the minor child and ordered an upward deviation for daycare expenses in the amount of $270 per month pursuant to N.D. Admin. Code 75-02-04.1-09(2)(g), (h), & (i).  An amended judgment was entered on August 23, 2018.

[¶5]  Johnson filed a motion seeking repayment of the excess child support he had paid to Thompson as a result of the lower child support obligation determined on remand and to eliminate the deviation for child care expenses.  Thompson filed a motion to vacate the second amended judgment or for the court to reconsider its decision, asserting the court did not consider Johnson's in-kind income in determining whether Johnson was underemployed.  A hearing on all motions was held October 18, 2018.  The district court denied Thompson's motion to vacate the judgment and declined to reconsider its decision.  Thompson filed an appeal before the court ruled on the potential overpayment of child support, and the court correctly refused to rule on the motion while an appeal was pending.

[¶6]  This Court remanded the case in November 2018 to resolve the pending motion on the potential overpayment of child support.  On remand, the district court

reduced the upward deviation and ordered Thompson to repay the excess child support she received. On appeal, Thompson argues the district court erred in finding Johnson to be underemployed by failing to consider Johnson's in-kind income, erred in modifying the upward deviation in child support, and erred in ordering Thompson to reimburse Johnson for excess child support.

## II.

[¶7] The standard of review for child support decisions is well established:

> Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. The district court errs as a matter of law if it fails to comply with the child support guidelines in determining an obligor's child support obligation.

*Thompson*, 2018 ND 142, ¶ 8, 912 N.W.2d 315.

[¶8] The child support guidelines found in N.D. Admin. Code ch. 75-02-04.1 govern child support determinations. *Raap v. Lenton*, 2016 ND 195, ¶ 5, 885 N.W.2d 777. "A correct finding of an obligor's net income is essential to determining the proper amount of child support." *Id.* "Income must be sufficiently documented through the use of tax returns . . . and other information to fully apprise the [district] court" of the obligor's income. N.D. Admin. Code § 75-02-04.1-02(7). "Each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." N.D. Admin. Code § 75-02-04.1-02(10). After establishing the obligor's net income, the district court applies that amount to the guidelines to calculate the proper amount of child support. *Raap*, at ¶ 5. The amount of child support calculated under the guidelines "is rebuttably presumed to be the correct amount of child support in all child support determinations." N.D. Admin. Code § 75-02-04.1-13; *see also* N.D. Admin. Code § 75-02-04.1-09(1).

[¶9]   Johnson is a self-employed farmer.   Determination of a self-employed individual's income for the purpose of calculating a child support obligation is governed, at least initially, by N.D. Admin. Code § 75-02-04.1-05. "Net income from self-employment means total income, for internal revenue service purposes, of the obligor."  N.D. Admin. Code § 75-02-04.1-05(1).  The guidelines recognize that "[s]elf-employment activities may experience significant changes in production and income over time."  N.D. Admin. Code § 75-02-04.1-05(4).  "To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, must be used to determine self-employment income."  *Id.*  "If the tax returns are not available or do not reasonably reflect the income from self-employment, profit and loss statements which more accurately reflect the current status must be used."  N.D. Admin. Code § 75-02-04.1-05(3).  A district court cannot arbitrarily ignore the guidelines simply because it feels the obligor's tax returns do not reasonably reflect the obligor's income without ordering the parties to present more information and making specific findings of fact.  *Raap*, 2016 ND 195, ¶ 7, 885 N.W.2d 777.

[¶10]  As required by the guidelines, the district court reviewed Johnson's tax returns for the years 2012-2016 to determine Johnson's net income from self-employment and found Johnson had an average loss of $50,972.  The court then reviewed Johnson's profit and loss statements for 2012-2016 to determine Johnson's net income from self-employment and found that Johnson had an average loss of $5,561.  In light of the findings that Johnson's tax returns, as well as the profit and loss statements, reflected average losses, the court determined Johnson was underemployed.

[¶11]  In determining Johnson to be underemployed, the district court cited to our earlier opinion, which included the following statement:  "Using either his adjusted gross income or profits and losses from his tax returns, Johnson is underemployed under the child support guidelines."  *Thompson*, 2018 ND 142, ¶ 14, 912 N.W.2d 315.  In isolation, that statement appears to be a directive compelling the conclusion

4

that Johnson is underemployed. However, determination of whether an individual is underemployed requires consideration of "earnings," which are defined far more broadly than income reflected in tax returns or profit and loss statements. N.D. Admin. Code § 75-02-04.1-07(1)(a). The court also ignores the additional statements from our prior opinion, including the following:

> The court failed to impute Johnson's income <u>or adequately explain how using his personal expenses and monthly budget</u> satisfied the child support guidelines. Therefore, the court erred as a matter of law by failing to calculate Johnson's child support obligation according to the child support guidelines.

*Thompson*, at ¶17 (emphasis added).

> Rather than imputing Johnson's income as an underemployed farmer under N.D. Admin. Code § 75-02-04.1-07(2) and (3), <u>or for failing to provide reliable information under N.D. Admin. Code § 75-02-04.1-07(6)</u>.[1]

*Id*. at ¶ 15 (emphasis added).

[¶12] The statement, "[u]sing either his adjusted gross income or profits and losses from his tax returns, Johnson is underemployed under the child support guidelines," was not the law of the case. Under the law of the case doctrine, when an appellate court has ruled on a legal question and remanded matter to the lower court, the legal question addressed becomes the law of the case and will not be modified on a subsequent appeal in the same case. *Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc.*, 2007 ND 36, ¶ 12, 729 N.W.2d 101. Our prior opinion did not hold Johnson was underemployed as a matter of law. Instead, our prior opinion left the question open and directed the district court to adequately explain its prior decision with a possibility of imputing income.

---

[1]N.D. Admin. Code § 75-02-04.1-07 was amended effective January 1, 2018. This opinion discusses the version of N.D. Admin. Code § 75-02-04.1-07 in effect prior to the amendments.

[¶13] The district court concluded Johnson was underemployed based exclusively on the average losses reflected on the tax returns and the profit and loss statements, and by referencing the statement from our prior opinion. The court did not otherwise consider Johnson's "earnings" to determine whether he is underemployed as required by N.D. Admin. Code § 75-02-04.1-07(1)(a). Under N.D. Admin. Code § 75-02-04.1-07(1), "earnings" and "underemployment" for the purpose of determining whether an individual is underemployed under the guidelines, are defined as follows:

    a.    "Earnings" includes in-kind income and amounts received in lieu of actual earnings, such as social security benefits, workers' compensation wage replacement benefits, unemployment insurance benefits, veterans' benefits, and earned income tax credits; and

    b.    An obligor is "underemployed" if the obligor's gross income from earnings is significantly less than this state's statewide average earnings for persons with similar work history and occupational qualifications.

Using only the tax return and profit and loss statement average losses, the court concluded Johnson was underemployed because those losses were significantly less than the state's average earnings of $82,170 for persons with similar work history and occupational qualifications. The court then imputed Johnson's income for child support purposes to be $49,302, six tenths of $82,170.

[¶14] Thompson argues the district court erred in failing to consider Johnson's in-kind income as required by N.D. Admin. Code § 75-02-04.1-07(1)(a) in determining Johnson's "earnings" and ultimately whether he is underemployed. The North Dakota Administrative Code defines in-kind income as "receipt from employment or income-producing activity of any valuable right, property or property interest, other than money or money's worth, including forgiveness of debt (other than through bankruptcy), use of property, including living quarters at no charge or less than the customary charge, and the use of consumable property or services at no charge or less than the customary charge." N.D. Admin. Code § 75-02-04.1-01(5).

6

[¶15]   Determining underemployment for the purpose of imputing income under N.D. Admin. Code § 75-02-04.1-07 is a two-step process.  First, the district court is required to determine the individual's earnings as defined by N.D. Admin. Code § 75-02-04.1-07(1)(a), including the consideration of in-kind income.  Second, after determining earnings, the court may determine an obligor to be underemployed "if the obligor's gross income from earnings is significantly less than this state's statewide average earnings for persons with similar work history and occupational qualifications." (Emphasis added).

[¶16]   In determining Johnson is underemployed, the district court relied exclusively on the losses reflected in Johnson's 2012-2016 tax returns and profit and loss statements.  The court did not consider Johnson's in-kind income as required by N.D. Admin. Code § 75-02-04.1-07(1)(a).  We conclude it is not possible to reconcile a finding that Johnson is underemployed with the district court's continued finding that Johnson has gross annual self-employment income of $171,560.66 and net annual income of $113,916, without further explanation.  It is also impossible to reconcile a finding that Johnson is underemployed with the finding that Johnson has "sufficient cash flow to meet his monthly expenses of $8,367" without further explanation.  Those findings are inherently inconsistent with the finding that Johnson has significantly less earnings than the state's average earnings of $82,170 required to conclude that Johnson is underemployed.

[¶17]   We agree with Thompson and find the district court cannot ignore its findings that Johnson has gross annual income of $171,560.66 and "sufficient cash flow to meet his monthly expenses of $8,367" to reach a conclusion that Johnson is underemployed without providing further explanation.  We conclude the court did not sufficiently explain how using Johnson's personal expenses and monthly budget satisfied the guidelines, or why those findings should not be used for determining whether Johnson is underemployed.  We reverse and remand for reconsideration of

7

the court's finding that Johnson was underemployed and for a correct calculation of child support under the guidelines.

[¶18]  We previously remanded this case, in part, to have the district court adequately explain how using Johnson's personal expenses and monthly budget satisfied the guidelines.  As we noted, one possibility is that the correct guideline income could potentially be calculated under N.D. Admin. Code § 75-02-04.1-07(6), which applies when an obligor fails to provide adequate reliable information and does not require a finding the obligor is underemployed.  *Thompson*, 2018 ND 142, ¶¶ 15-16, 912 N.W.2d 315.  In our prior review of this case, we noted the court, after reviewing Johnson's tax returns, found  Johnson's "income tax returns do not accurately reflect his gross income and do not reflect Christopher's in-kind income . . . [t]he record also reflects that Johnson did not produce a number of financial documents requested in discovery, despite orders to compel production."  *Id*.  We also recognized the court had found  "Johnson co-mingled his personal and business accounts, 'making it hard to ascertain the exact amounts used for each.'"  *Id*. at ¶ 15.  Additionally, we acknowledged the court reviewed "Johnson's personal expenses and monthly budget and found Johnson's annual self-employment income was $171,560.66 . . . [and] found Johnson's net annual income was $113,916."  *Id*. at ¶ 6.  The district court also noted  Johnson has "sufficient cash flow to meet his monthly expenses of $8,367."  Rather than explain its findings on remand, the court jumped directly to the conclusion Johnson was underemployed.

## III.

[¶19]  Thompson also appeals from the district court's modification of the upward deviation in child support related to child care expenses and the directive to Thompson to reimburse Johnson for the excess child support he paid.  Because both of those issues are dependent upon the court's determination of the correct amount of child support on remand, we decline to address those issues on this appeal.  *See Forsman v. Blues, Brews & Bar-B-Ques, Inc.*, 2012 ND 184, ¶ 17, 820 N.W.2d 748

8

(declining to address issue not certain to arise on remand). We reverse the judgment of the district court and remand.

[¶20]   Jon J. Jensen
       Jerod E. Tufte
       Daniel J. Crothers
       Todd L. Cresap, D.J.
       Gerald W. VandeWalle, C.J.


[¶21] The Honorable Todd L. Cresap, D.J., sitting in place of McEvers, J., disqualified.